IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| | Plaintiff, | **4:15CR3037** |
| vs. | | |
| SCOTT TRAN, | | **FINDINGS AND RECOMMENDATION** |
| | Defendant. | |

Claimant Bryan Tran has filed an Opposition to Forfeiture, (Filing No. 108), and seeks $35,000 in funds seized as part of the criminal case against Scott Tran. The United States has moved to dismiss Bryan Tran's opposition to forfeiture. (Filing No. 125). For the reasons set forth below, the Claimant's objection should be overruled, and the government's motion granted.

BACKGROUND

Defendant Scott Tran entered a guilty plea and was convicted on charges of federal health care fraud. As part of his plea agreement (Filing No. 65), Scott Tran admitted to forfeiture allegations. Pursuant to the Order of Forfeiture, various assets, including $35,000.00 from US Bank account no. 151705973221, ("the US Bank Account") were subject to forfeiture. (Filing No. 90 at CM/ECF p. 3). That is, he agreed numerous assets, including the funds in the US Bank Account, were derived from his scheme to defraud a health care benefit program and should be forfeited to the government.

Scott Tran's brother, Bryan, filed a Petition in Opposition to Forfeiture. In the Petition, Bryan Tran states he opened the US Bank Account for the purpose of entering into a "gambling venture" with Scott Tran. (Filing No. 108 at CM/ECF p. 1, ¶¶ 2-3).

Scott Tran would allegedly take the money deposited in the US Bank Account, gamble with those funds, and deposit any winnings back into the US Bank Account for Bryan Tran's benefit.  (Filing No. 108 at CM/ECF p. 1 ¶¶ 4-7).  Sometime shortly after the account was opened, Scott Tran's name was added to the account as a joint account holder.

The following transactions occurred in the account:

- September 15, 2014 – Bryan Tran opened the account with a deposit of $5,000;
- October 16, 2014 – Scott Tran deposited a $25,000 check from Horseshoe Casino in Council Bluffs, Iowa;
- December 19, 2014 – Bryan Tran withdrew $5,000;
- January 9, 2015 – Scott Tran deposited a $10,000 check from the Horseshoe Casino in Council Bluffs, Iowa.

The account balance at the time of seizure was $35,000.  The government seized the US Bank Account and sought forfeiture of the account funds as proceeds traceable to Scott Tran's Medicaid fraud.  Bryan Tran argues he is entitled to the $35,000 in the US Bank Account because to the best of his information and belief "all of the funds deposited in the account by Scott were not contraband nor the proceeds of any illegal activity engaged in by Scott, and were comprised solely of gambling winnings from bets made by Scott on Bryan's behalf."  (Filing No. 108 at CM/ECF p. 2, ¶ 8).

## ANALYSIS

Pursuant to 21 U.S.C. § 853(n)(2) "any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States" is entitled to a hearing to determine the validity of the claimant's alleged interest in the

property subject to forfeiture.  "If, after the hearing, the court determines the petitioner has established by a preponderance of the evidence" that he has a legal right, title, or interest in the contested property, the court is required to amend the order of forfeiture. 21 U.S.C. § 853(n)(6).

To bring an action challenging an order of forfeiture, a third party must have standing.  "Standing in forfeiture cases has 'both constitutional and statutory aspects.'" United States v. Timley, 507 F.3d 1125, 1129 (8th Cir. 2007)(quoting United States v. One–Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir.2003)).  Constitutional standing requires the party challenging forfeiture to "demonstrate an ownership or possessory interest in in the seized property."  Bulger, 507 F.3d at 41.  Statutory standing, pursuant to § 853, requires the claimant to have a "legal interest" in the property.  To determine whether a "legal interest" exists, the court "must first look at the law of the jurisdiction that created the property right to determine whether the claimant has a valid interest." Timely, 507 F.3d at 1129-30.

It is only after the court makes a finding of standing that it must determine whether the claimant has a superior interest to the government's interest in the contested funds.  There are two ways in which a claimant can successfully challenge an order of forfeiture.  Under § 853(n)(6)(A), a claimant must prove he had priority of ownership at the time of the offense.  Section 853(n)(6)(B) requires showing the claimant was a bona fide purchaser for value.  The burden of proof is on the claimant and must be met by a preponderance of the evidence.

In this case, Bryan Tran asserts he established the US Bank Account and added Scott's name so Scott would have easier access to deposited funds. Bryan Tran allegedly established the account for the sole purpose of depositing funds so his brother Scott could

gamble on Bryan's behalf.  Bryan Tran also asserts Scott Tran was to place any winnings in the US Bank Account.  The government filed a motion to dismiss Bryan Tran's objection because the government argues Bryan Tran does not have standing to contest the forfeiture (Filing No. 25).  However, in its briefing the government apparently concedes Bryan Tran has a "legal interest" in the funds for the purposes of standing, but argues Bryan Tran does not have a superior interest under § 853(n)(6)(A) or (B).  The court will address both standing and whether Bryan Tran has a superior interest in any of the funds in the US Bank Account.

    1.    <u>Standing.</u>

The parties apparently agree that Bryan Tran's status as a joint account holder provides him a "legal right" to the property for the purposes of standing.  However, to determine what, if any, "legal right" Bryan Tran has in the property, the court must look at the law of the state where the property right was created. Timely, 507 F.3d at 1129-30. In this case, it appears the US Bank Account was established in Arizona and later deposits were made in Nebraska. In both states, a joint account holder does not presumptively have an ownership interest in all funds.  Rather, "an account belongs to the parties in proportion to the net contribution of each to the sums on deposit unless there is clear and convincing evidence of a different intent." Ariz. Rev. Stat. § 14-6211; Neb. Rev. Stat. § 30-2722.  The "net contribution means the sums of all deposits to an account made by or for the party, less all payment from the account that are made to or for the party . . . ." Id.

Thus, absent clear and convincing evidence to the contrary, Bryan Tran's and Scott Tran's right to the funds in the US Bank Account are limited to their respective contributions; in this case, $5,000 for Bryan Tran, and $35,000 for Scott Tran.  (Filing No. 132-5).  Bryan Tran argues all of the money deposited into the account, including the

$35,000 deposited by Scott Tran, was for the benefit of Bryan Tran.  Both Scott Tran and Bryan Tran testified that the purpose of the account was to house Scott Tran's gambling winnings.  And while the government argues the funds were not gambling winnings from Bryan Tran's original deposit, it apparently does not argue that the intent of Scott Tran's deposits were for the benefit of Bryan Tran.  Accordingly, Bryan Tran has standing to contest the forfeiture.

       2.    <u>Interest in the US Bank Account.</u>

A finding of standing does not end the analysis.  Pursuant to § 853(n)(6)(A), to prevail on his objection to the forfeiture proceeding, Bryan Tran must establish by a preponderance of the evidence that he had priority of ownership in the $35,000 deposited in the US Bank Account at the time it was seized.[1]  Bryan Tran claims the money within the account was not directly or indirectly derived from Scott Tran's fraudulent activity. He argues the initial deposit of $5,000 was his money, and all later deposits into the US Bank Account were winnings directly traceable to Scott Tran's gambling successes on Bryan Tran's behalf.  The court is not convinced.

Bryan Tran testified that he deposited money into the account, hoping Scott Tran would gamble with that money and win. But Bryan Tran knew little of Scott Tran's specific gambling activities.  (Filing No. 154 at CM/ECF pp. 24:24–25:21).  When questioned about the origin of the money Scott Tran deposited into the account, Bryan Tran stated he assumed Scott Tran had "won at the casino" and that "sometimes" Scott Tran would tell Bryan Tran he was going to be in Las Vegas.  (Filing No. 154 at CM/ECF p. 21:18-19).  Bryan Tran did not know how Scott Tran gambled, when he gambled, or how much was gambled.  (Filing No. 154 at CM/ECF pp. 24:13-15).

_____

[1] Bryan Tran has not argued he was a bona fide purchaser for value of any of the funds in the US Bank Account.  Accordingly, the court will only analyze whether Bryan Tran has a superior interest to the seized US Bank Account pursuant to § 853(n)(6)(A).

5

Bryan Tran testified that he opened the US Bank Account with $5,000 – an amount he withdrew prior to the government's seizure of the account.  Contrary to the image he tried to paint of himself at the hearing as a fiscal conservative, both Bryan and Scott Tran testified that Bryan Tran gave Scott Tran cash (outside of the US Bank Account) with which to gamble, and Bryan Tran could not remember when or how much cash he entrusted to Scott Tran for gambling. Even assuming Scott Tran did gamble with the cash received from his brother, neither Tran could state with any certainty whether Scott Tran won while gambling with that money, and if he did, whether the stake and winnings were ultimately deposited into the US Bank Account.  In other words, other than the documented deposit and withdrawal from US Bank Account prior to the government seizure, Bryan Tran can provide only a vague description of when and how much money he handed to Scott Tran, what was done with that money, and where it was deposited, lost, or spent.

Scott Tran vaguely testified that aside from the US Bank Account deposit, Bryan Tran gave him money "up front" prior to gambling.  The only specific instance he could recall was when he allegedly received "somewhere around" $7,000 to $10,000 from Bryan Tran over "one of the holidays:" He could not identify which holiday and like Bryan Tran, he could not state the amount.  (Filing No. 154 at CM/ECF pp. 46:23-47:5). Scott Tran's testimony was internally inconsistent as to whether he received $7,000 to $10,000 in cash from Bryan Tran before or after the US Bank Account was opened. (Compare Filing No. 154 at CM/ECF p.47:6-12 with Filing No. 154 at CM/ECF p. 49:13-16).  Moreover, Scott Tran testified that he did not take the $7,000 to $10,000 to the casinos or ever put it into an account, but testified he nonetheless made money gambling with it.  (Filing No. 154 at CM/ECF p. 49:17-50:2).

Scott Tran could not remember any specifics of when or how he won money gambling on Bryan Tran's behalf.  He testified very generally that he kept separate piles of gambling chips and tried to keep track of which winnings were his and which were Bryan's.  But he did not identify a specific time or occasion during which he won money gambling for Bryan Tran.

Finally, any claim that the amounts deposited in the US Bank Account by Scott Tran were derived, even in part, from gambling winnings is dubious at best.  Federal Bureau of Investigation Forfeiture Investigator Gerald Bell testified Scott Tran "lost over . . . $7,000,000" gambling over an approximately seven-year period.  (Filing No. 154 at CM/ECF p. 37:1-2).  While Scott Tran may have won in a given month, neither Scott Tran or Bryan Tran provided any specific information about when Scott Tran may have experienced any gambling success.

And even if Scott Tran experienced some fleeting gambling success, Bryan Tran provided no explanation for how Scott Tran managed to leverage the initial deposit of $5,000 into $25,000 without ever withdrawing the money Bryan Tran placed in the US Bank Account. That is, the only withdrawal ever made from the account was Bryan Tran's withdrawal of $5,000 on December 19, 2014.  Which begs the question:  What was the source of the funds Scott Tran used for gambling on Bryan Tran's benefit? Certainly not the $5,000 placed in the account by Bryan Tran.

Having heard and considered the testimony and evidence presented, I find that Bryan Tran has failed to show he has any valid interest in the $35,000 in US Bank account no. 151705973221 when that account was seized by the government.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that Claimant Bryan Tran Opposition to Forfeiture, (Filing No. 108), be overruled and the United States' Motion to Dismiss Bryan Tran's opposition to forfeiture, (Filing No. 125), be granted.

Claimant Bryan Tran is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 12th day of January, 2017.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.